**Kathy PROSSER, Commissioner of the Indiana Department of Environmental Management, Appellant–Plaintiff (Counterclaim Defendant),**

v.

**WASTE MANAGEMENT, INC.; Waste Management of North America, Inc.; and Indiana Waste Systems, Inc., Appellees–Defendants (Counterclaimants).**

No. 86A03–9208–CV–267.

Court of Appeals of Indiana,
Third District.

May 3, 1993.

Rehearing Denied June 16, 1993.

Ronald E. Elberger, Keith E. White, George T. Patton, Jr., Bose McKinney & Evans, Indianapolis, for appellant-plaintiff.

Robert F. Parker, Daniel W. Glavin, Beckman, Kelly & Smith, Hammond, for appellees-defendants.

HOFFMAN, Judge.

Appellant-plaintiff Kathy Prosser, Commissioner of the Indiana Department of Environmental Management (IDEM) appeals a July 31, 1992 judgment of the Warren Circuit Court which incorporated by reference a January 28, 1992 partial summary judgment in favor of appellees-defendants Waste Management, Inc., Waste Management of North America, Inc., and Indiana Waste Systems, Inc. (collectively referred to as Waste Management).

The facts relevant to the appeal disclose that on May 18, 1972, the Indiana Stream Pollution Control Board (IDEM's predecessor) approved the proposal of Red Top Trucking Company, Inc. (Red Top) to operate a sanitary landfill at the site in question (Glenwood Ridge a/k/a the J–Pit) subject to eleven conditions. One of the conditions was that Red Top obtain "all necessary local permits, including zoning" prior to any operation. Although the approval was to become void if Red Top had not begun operation before June 1, 1973, the Pollution Control Board granted Red Top several extensions of time, the last of which expired in May of 1976. On December 29, 1976, the Pollution Control Board issued a

construction plan permit to Red Top subject to two conditions:

"1. That all necessary local permits, including zoning, be obtained prior to any construction.

2. That a system of monitoring wells be established around the proposed landfill site in accordance with recommendations of the staff of the State Board of Health."

Record at 4704. The permit expired on January 1, 1979, without the construction of a sanitary landfill.

Subsequent to the Pollution Control Board's approval of Red Top's 1972 proposal, Cal Area Sportsman Club, Inc. (Cal Area) petitioned the City of Gary Plan Commission (Commission) to re-zone the property and requested a special use permit for a sanitary landfill.[1] After a hearing on August 29, 1972, the Commission granted the re-zoning petition but withheld voting on the special use permit to enable Cal Area to act on certain recommendations concerning the use of the land. The Commission reported on both the re-zoning petition and the special use permit at the September 26, 1972 meeting of the Gary City Council (Council). At its October 24, 1972 meeting, the Council assigned the two matters to its Public Improvement Committee which recommended passage subject to public hearing on November 21, 1972. The Council took no action on either matter until March 6, 1973, at which time the chairman, on the advice of a city attorney, declared the matters technically defeated due to the fact that the Council had not acted on them within ninety days of their submission.

Several years later on July 17, 1987, Waste Management entered into an agreement with Cal Area to purchase Glenwood Ridge for $5,500,000.00. The purchase agreement contained the following condition:

"As material consideration for Purchaser's agreement to purchase, the parties contemplate Seller's initiation and prosecution of a lawsuit at Seller's expense to confirm the zoning and local land use regulation of the premises as being proper for a sanitary landfill use and to confirm the 'grandfathered' status of Seller's former State of Indiana sanitary landfill permits."

Record at 3047. On August 14, 1987, Cal Area instituted a declaratory judgment action naming, among others, IDEM and the City of Gary as defendants. IDEM filed a motion to dismiss itself from the action on October 2, 1987, which the Jasper Superior Court granted on November 25, 1987. On December 21, 1987, the Jasper Superior Court granted summary judgment in favor of Cal Area, stating that the property was lawfully zoned and permitted for landfill purposes prior to the enactment of IND. CODE § 13–7–19–2 (1982 Ed.), the half-mile setback statute. Cal Area assigned all of its rights to Waste Management on April 22, 1988.

On January 31, 1989, Waste Management filed an application with IDEM for a new sanitary landfill permit for Glenwood Ridge. At various times throughout the rest of 1989, IDEM advised Waste Management that additional information was needed, and Waste Management provided same. On February 27, 1990, IDEM sent Waste Management a certified letter stating that the application was complete and would be forwarded for "technical review." Tom Davis, an IDEM geologist, drafted a memorandum dated May 11, 1990 which set out several deficiencies in the application, one of which was that the site might qualify as a wetlands. Waste Management provided additional information, and IDEM completed its geology review on December 18, 1990.

In September 1990, IDEM assigned Ghodrat Hiadari, an engineer, to review Waste Management's application; however, due to a backlog of cases, Hiadari was unable to begin his review until April 18, 1991. Upon completion of his review on May 10, 1991, Hiadari prepared a list of items for Waste Management to address, including the wetlands issue. The engi-

---

1. Wayne D. Paulson was the president of both Cal Area and Red Top. Although Red Top submitted the landfill proposals for Glenwood Ridge, Cal Area actually owned the property.

neering staffs of IDEM and Waste Management met on June 5, 1991, and Waste Management agreed to submit additional information on the wetlands issue among others.[2] On June 6, 1991, Waste Management began construction of a landfill at Glenwood Ridge under the authority of the Jasper Superior Court determination. By letter dated June 20, 1991, IDEM informed Waste Management that it had no permit to construct or operate a sanitary landfill at that site; however, Waste Management continued its activities for a total of six days.

On June 27, 1991, IDEM filed a complaint for permanent injunction and civil penalties against Waste Management. Waste Management filed an answer, counterclaim, and motion for change of venue on July 12, 1991. The Warren Circuit Court assumed jurisdiction over the matter, and on November 7, 1991, IDEM moved for partial summary judgment on its complaint and count two of Waste Management's counterclaim.[3] Waste Management filed a cross-motion for partial summary judgment on December 16, 1991, which the trial court granted on January 28, 1992. On February 3, 1992, IDEM moved for reconsideration of the partial summary judgment, which motion the court took under advisement until the conclusion of a bench trial on the remaining counts of Waste Management's counterclaim. On July 31, 1992, the court denied IDEM's motion to reconsider and entered findings of fact and conclusions of law with the following order:

"Based upon the foregoing findings and conclusions the Court orders in regard to Defendant's Counter–Claim Count I that IDEM be and hereby is ordered to complete its initial reviews within 30 days herefrom and if any additional information is required from Waste Management then Waste Management shall provide the same within 45 days herefrom.

IDEM shall then have 60 days herefrom within which to review any supplemental items and the entire process shall be completed within 90 days herefrom. At the conclusion of IDEM's review IDEM is ordered to make a determination as to the application of Waste Management and either grant the application or if denied then set forth all reasons for the denial. Further ordered that for the purposes of these proceedings the denial by IDEM of January 22, 1992, shall be deemed of no force and effect given the ruling by the Court by way of its Summary Judgment entered herein.[4] The permit application of Waste Management is ordered considered to be an application pending since its original date of filing, without regard to the denial of January 22, 1992. It is therefore ordered that Defendant, Waste Management, be and hereby is entitled to recovery on Count 1 of its Counter–Claim. All at Plaintiff's costs.

In regard to Count III of Waste Management's Counter–Claim, it is ordered that 329 IAC applies to Waste Management unless any provisions therein are based upon a statute that only had prospective effect and which was passed after the filing of Waste Management's permit application. Further specifically ordered that I.C. 13–7–10–1.5, the need demonstration and I.C. 13–7–10.2, the good character demonstration, do not apply to Waste Management's pending application and Waste Management is not required to comply with the terms thereof. Further ordered that Waste Management is subject to the provisions of I.C. 13–7–22–2, the net worth demonstration, and is required to comply with the provisions thereof. Judgment accordingly entered on Count III of Waste Management's Counter–Claim.

**2.** The Army Corps of Engineers certified that the site was not a wetlands on September 6, 1991.

**3.** In count two of its counterclaim, Waste Management requested a declaration that "all necessary regulatory authorizations, including zoning and permitting, to construct and operate a sanitary landfill at the Glenwood Ridge site" were in place.

**4.** On January 22, 1992, IDEM sent Waste Management a certified letter denying the application due to IND.CODE 13–7–19–2, the half-mile setback statute.

Further ordered that Waste Management shall take nothing by way of Counter–Claim Count IV, and Judgment entered in favor of IDEM on Count IV of Defendant's Counter–Claim.

Judgment entered accordingly. All at Plaintiff's costs."

Record at 2075–2077. This appeal ensued.

IDEM raises six issues for review; however, this Court finds the following issue dispositive: whether the Warren Circuit Court erred in finding that the determination of the Jasper Superior Court was binding on IDEM, a non-party to the action.

■ In its motion to dismiss itself from the Jasper Superior Court action, IDEM stated that any controversy over a landfill at Glenwood Ridge was a local matter between Cal Area and the City of Gary because a landfill permit from the State was in existence in 1972.[5] Due to the lack of opposition from Cal Area, the Jasper Superior Court granted IDEM's motion to dismiss then entered summary judgment in favor of Cal Area. In its order granting summary judgment, the court concluded that under IND.CODE § 18–7–5–42 (since repealed; see now IND.CODE § 36–7–4–509), the re-zoning petition and permit request Cal Area submitted to the Gary Plan Commission became effective on December 27, 1972, 120 days after the Commission's August 29, 1972 hearing, due to the City Council's failure to act on them within that period of time.[6]

In light of the above, the Jasper Superior Court's finding that the property "was lawfully zoned and permitted for landfill purposes" prior to February 28, 1978, the effective date of the half-mile setback statute (IND.CODE § 19–2–1–33; see now IND. CODE § 13–7–19–2), was proper. However, Red Top/Cal Area allowed the two permits from the State to expire in 1976 and 1979 without ever constructing a landfill on the property. Consequently, neither the Jasper Superior Court action nor Cal Area's 1988 assignment of rights to Waste Management bound IDEM in any way. Furthermore, due to the expiration of the second State permit in 1979, Waste Management *did* have to comply with the half-mile setback statute when it filed its application for a new permit in 1989. The judgment of the Warren Circuit Court is reversed.

Reversed.

GARRARD and STATON, JJ., concur.

---

5. As previously discussed in footnote 1, Red Top submitted the landfill proposals to the Pollution Control Board (IDEM's predecessor), but Cal Area owned the property.

6. IND.CODE § 18–7–5–42 states as follows: "One hundred twenty (120) days after certification of the plan and ordinance to the city council or the board of county commissioners, the plan and ordinance shall have the same effect as all other ordinances unless the city council or the board of county commissioners has within that time finally acted upon it."

As the Jasper Superior Court noted, the two matters became effective even using the date of submission to the City Council, September 26, 1972, because more than 120 days had elapsed before the Council's March 6, 1973 rejection.